NELSON BEALL AND GEORGE W. McCULLOUGH vs.
ROBERT POOLE, GORMAN H. HUNT AND THOMAS H.
SMITH, trading as POOLE & HUNT. ROBERT POOLE,
GORMAN H. HUNT AND THOMAS H. SMITH, trading
as POOLE & HUNT, vs. NELSON BEALL, GEORGE W.
McCULLOUGH, JOHN HOWARTH AND GEORGE HUTTON,
trading as HOWARTH & HUTTON.

*Evidence—Liability of an incoming Partner—Pleading.*

Letters offered in evidence to prove a partnership, inadmissible in them-
selves for such purpose, may be admitted upon the promise, that in con-
nexion therewith, articles of agreement showing the partnership, would
be given in evidence, and also proof by witnesses of its existence prior
to a certain date.

Where a partnership is sought to be shown, and articles of agreement
between the alleged partners, have been offered in evidence, " a memo-
randum of an agreement to be entered into at some future day " by the
same parties, in the handwriting of one of them, is admissible as an
item of evidence, to show his intention to become a partner at a date
prior to that in the articles of agreement, but only as affecting him.

In an action against a partnership, the existence of which is denied by
two of the alleged partners, as to themselves, it is admissible to offer in
evidence, bills in the handwriting of another of the alleged members of
the firm as evidence of partnership against him, notwithstanding he has
confessed judgment in favor of the plaintiffs in the case, thereby admit-
ting the partnership.

Where a question is raised as to the existence of a partnership, parol
proof proffered to show that the articles of co-partnership was a paper,
which it was agreed among those who signed it should not be given up
by the party who prepared it, and who himself was not to be bound by
it, until he should be satisfied, by a schedule produced to him by two of
the parties that their indebtedness did not exceed a certain amount, is
admissible as evidence to prove that the partnership did not in fact exist
among all the parties, until the condition, upon which the paper was to
take effect, was complied with.

An incoming partner will not be liable in respect of debts, contracted by
the firm previously to his joining it; and the presumption of law is
against any such liability. Yet he may become liable by expressly
assuming them upon a proper consideration, or otherwise dealing with
the creditor in such a manner, as to create an implied obligation and

646       MARYLAND REPORTS.

Beall and McCullough vs. Poole & Hunt. Poole & Hunt vs. Howarth & Hutton

duty to pay the same in common with the old firm, but this is not to be inferred from the mere act of joining in the partnership; there must be some agreement between the incoming partner and the creditor, either express or implied, and his liability with respect to the old debts of the firm will attach by virtue of the agreement, and not by reason simply of his having become a partner.

Testimony relating to papers which should have been submitted to the witness and identified and returned with the commission, or to their contents, when these themselves are important and material, and are the best evidence of their own existence or nature, is inadmissible, when their non-production is unexplained, and no foundation has been laid for the introduction of parol proof.

Where four persons are sued jointly and declared against as partners, for money payable, goods sold and delivered, money paid, money lent, and work done and materials furnished, and it should appear that two of the defendants contracted for the articles charged in the plaintiffs' account offered in evidence, and that afterwards the other defendants became partners of the firm, and they all agreed with the plaintiffs to pay for said articles, the manner of declaring would not be an obstacle in the way of the plaintiffs' recovery.

CROSS APPEALS from the Circuit Court for Allegany County.

The facts of the case, together with the numerous exceptions taken at the trial below, are sufficiently disclosed in the opinion of the Court.

The cause was argued before BOWIE, C. J., BARTOL, WEISEL and CRAIN, J.

*Thomas J. McKaig* and *Thomas J. McKaig, Jr.,* for Beall, McCullough, Howarth and Hutton.

This action was instituted by Poole & Hunt to recover the sum of $2,052.63, the amount of a bill of goods, wares and merchandise, furnished the firm of Howarth & Hutton, at that time operating a coal oil factory at or near Tunnelton, West Virginia. And it is claimed by the firm of Poole & Hunt, that George W. McCullough and Nelson Beall were also, at the time the said wares

APRIL TERM, 1867.          647

Beall and McCullough *vs.* Poole & Hunt. Poole & Hunt *vs.* Howarth & Hutton

were contracted for and furnished, partners in the firm of Howarth & Hutton. The right of Poole & Hunt, therefore, to recover in this action, hinges on the establishment of this fact, which is traversed by Beall & McCullough, who severed in their defence and filed a separate plea to the declaration. All the evidence in the cause indisputably fixes the time at which the said wares and merchandise were ordered and contracted for, to have been prior to the first day of November, 1859, and were ordered on the credit and for the account of Howarth & Hutton. It is maintained on the part of Beall & McCullough, that the articles of co-partnership between Howarth, Hutton, and themselves, executed the 17th day of November, 1859, one month subsequent to the time the last portion of the work was ordered, is the only evidence adduced upon the part of the plaintiffs, entitled to be considered in any manner proper and legal evidence, to establish this pretended partnership on the part of Beall & McCullough. And that as this contract was made prior to the entrance of Beall & McCullough into the firm, and as there is not a scintilla of evidence in the cause to establish any *novatio debiti*, Poole & Hunt cannot recover in this action. *Story on Partnership*, sec. 153. The unsigned articles of agreement, dated September 29th, 1859, were assuredly inadmissible as evidence to establish a partnership. Even if they had been signed, no partnership would thereby have been constituted until the agreement was carried out. *Collyer on Partnership*, B. 5, ch. 1, sec. 2, p. 735 to 743; *Bourne vs. Freeth*, 9 *Barn. & Cress.*, 632. The Court below ruled improperly in granting the plaintiffs' first prayer, because it omits the fact absolutely necessary to a recovery upon the part of the plaintiffs, and which is traversed by the defendants, viz: that the partnership alleged existed at the time the goods were ordered and contracted for. *Young et al. vs. Hunter et al.*, 4 *Taunt.*, 583. The second and

third prayers of the plaintiffs, as propositions of law, are so grossly defective, that it is difficult to imagine how the Court below could seriously entertain them for a moment, much less grant them. A partnership is a contract, having attached to it the ordinary incidents and attributes of contracts, and must be so proved. *Story on Partnership,* sec. 6. A community of interest in the property, and a community of interest in the profits, are the necessary ingredients to constitute a partnership, and when neither of these, or only one without the other exists, no partnership can be established. 2 *Greenl. on Ev.,* sec., 482; *Story on Part.,* sec. 30. The Court below erred in attaching the modification, it did, to the defendants' first prayer, simply because there was no evidence upon which to base said modification, and it was therefore calculated to mislead the jury. The rejection of the defendants' second prayer was also erroneous. *Story on Part.,* sec. 153. The defendants' third prayer should have been granted, there being no evidence whatever in the cause to establish any *novatio debiti* upon the part of Beall & McCullough. The defendants below, therefore respectfully ask a reversal of the judgment in this case, and as the plaintiffs have signally failed by any legal or sufficient evidence in establishing a partnership as to Beall and McCullough, at the time the goods were ordered and contracted for, that no *procedendo* be awarded in the case.

*J. H. Gordon* and *William Walsh,* for Poole & Hunt.

The books say that letters, memoranda, &c., showing an intention to give a person a share of the profits, coupled with proof that the intention was acted on, or of interference of one in the business of the other, are proper proofs of partnership. *Collyer on Part.,* sec. 769, *and note* 2; *Heyhoe vs. Burge,* 67 *Eng. Com. Law Rep.,* 431; *Nicholls vs. Dowding,* 1 *Stark. Rep.,* 81. In an

action against four as partners, they must all be partners, or no recovery can be had. The confession of judgment by Hutton did not dispense with the necessity of proving, as against the other three, that he was a partner. And even if the confession of judgment was sufficient, Poole & Hunt had a right to offer all the additional testimony they had, to prove that point; all the bills and receipts were in Hutton's handwriting, and were clearly evidence, as his acts, to establish the fact that he was a member of the firm. The modification of the defendants' first prayer is in the very words of the law as laid down in *Story on Partnership*, and the articles of partnership, dated 17th of November, 1859, contained an express assumption of all pre-existing indebtedness. The defendants' second and third prayers were properly rejected. The incoming partner has the benefits of the purchases and contracts of the old firm, and slight circumstances will authorize the jury to find an adoption of previous contracts by him. *Collyer on Part.*, sec. 522; *Story on Part.*, secs. 152, 153; *Exparte Peele*, 6 *Vesey*, 602; *Vere et al. vs. Ashby et al.*, 10 *Barn. & Cress.*, 288. There need not be a novation; a novation is where there is no consideration for the promise to pay the debt, but the extinguishment of it against the original debtor. The new partner taking the benefit of the previous contracts, adopts them and makes the original partner his agent *ab initio. Hobey vs. Roebuck*, 2 *Marsh*, 434; *Helsby et al. vs. Mears et al.*, 5 *Barn. & Cress.*, 504. Moreover, there was no contract made by Hutton and Howarth, for any specific goods, and the property only passed portion by portion, and the liability accrued on the implied assumpsit from receiving the goods. *Woods vs. Russell*, 5 *Barn. & Adol.*, 942.

WEISEL J., delivered the opinion of this Court.

The appellants, with John Howarth and George Hutton,

were jointly sued in the Circuit Court for Allegany County, and declared against as partners under the name and style of Howarth & Hutton, for money payable, goods sold and delivered, money paid, money lent, and work done and materials found. The appellees, plaintiffs below, were partners under the name of Poole & Hunt and they so declared. No time was alleged in the declaration, and the suit was instituted on the 3d of April, 1860. The defendants had all been returned "summoned," and all appeared by attorneys, except Howarth, whose personal appearance was entered by order of Court. After continuances, Hutton suffered judgment against him, and afterwards and upon trial, a verdict was rendered in favor of the defendants, which, upon motion, was set aside and a new trial granted, on the ground of the repugnancy of the verdict to the judgment confessed by Hutton, the defendants having been sued and declared against jointly. On the new trial Beall & McCullough, two of the defendants, had leave to amend the plea, and each pleaded that he was never indebted as alleged, on which issue was joined. The trial proceeded and the defence was conducted by said Beall & McCullough, who resisted the efforts made by the plaintiffs to fasten upon them responsibility as co-partners with Howarth & Hutton, for the articles in the account produced in evidence and sought to be recovered. Whatever irregularities may appear in the proceedings, no question arose upon them. The whole controversy was as to the liability of the two defendants, Beall & McCullough, or either of them, in the action. The verdict and judgment were for the plaintiffs, and this appeal has been prosecuted by the said Beall & McCullough from the various rulings against them, embraced in the twelve exceptions taken by them in the record.

The first exception was abandoned in the argument.

The plaintiffs offered the two letters in the second exception, with a statement to the Court that they would

give in evidence, in connexion therewith, articles of agreement showing a partnership among all the defendants in the cause, and that it existed among them all prior to the 8th day of September, 1859. The Court, upon this promise, allowed the letters to go before the jury, and not upon the ground that they were evidence in themselves of the partnership. The defendants could afterwards, if the connexion with the other proof of partnership to be adduced failed, move the Court to withdraw the letters, and then take their exception to the action of the Court if refused. The Court committed no error in allowing the letters to be read when offered in the manner proposed.

Articles of co-partnership made the 17th November, 1859, with other proof, having been offered by the plaintiffs and gone in, they then further offered the paper in the third exception, *dated September* 29, 1859, and admitted to be in the handwriting of the defendant Beall. It is complete with the exception of the signatures of the four parties named therein, (the defendants,) and an attesting witness, and is expressly entitled a memorandum of an agreement made that day to be finally made and entered into at some future day between them. Its admissibility was objected to by the defendants, but the objection was overruled.

As an item of evidence to show Beall's intention to become a partner at a date prior to that in the articles of agreement given in evidence, the paper offered being in the handwriting of said Beall, we think it was properly admissible, but only as affecting Mr. Beall.

The bills offered in the fourth exception and allowed to be put in evidence by the plaintiffs were admitted to be in the handwriting of Hutton, and were announced to the Court as offered only as evidence of partnership against Hutton. The fact that Hutton had confessed judgment for the claim and thus admitted the partnership, did not preclude the plaintiffs from showing by any further testi-

mony his connnexion with it, as a co-partner. The suit was against the four jointly, and it was the privilege and duty of the plaintiffs to establish by competent proof the connexion of each one with the firm. This was all that was proffered to be done, and to this extent and for this purpose the testimony was clearly admissible. Its introduction could not prejudice the rights of the other parties, defendants.

The trial proceeding, the plaintiffs offered in evidence an unsigned paper, admitted to be in the handwriting of said Beall, and described as articles of agreement between Hutton, Beall & Co. (of Allegany county, Maryland, and Boston, Mass.) and Samuel Mattick, of Preston county, Virginia, dated "this —— day of November, 1859." It proposed to exchange certain lands of the partnership, which had been purchased by Howarth, and describing them, with Mattick for certain other lands containing cannel coal, and for certain mining privileges. Its admissibility was objected to, but allowed by the Court, and to this ruling the fifth exception was taken by the defendants. It was admissible, as another item of proof against Mr. Beall, in whose handwriting the paper was admitted to be, and as cumulative evidence of his membership of the firm, the paper could not be ruled out.

Tibbetts, a witness for the plaintiffs, having been examined in chief, proceeded, on the cross-examination, to state that "there were complaints made by Howarth & Hutton, by letter, of the defectiveness of the work." To this statement the plaintiffs objected, and the Court refused to permit it to go before the jury as evidence; and we think rightly. The offer was to prove by parol the contents of a letter, not produced or for the production of which no notice appears to have been given. This disposes of the sixth exception.

The defendants' seventh exception was taken to the exclusion by the Court of portions of evidence taken by

them under a commission issued to A. W. Boardman, Boston, under which John Howarth, one of the defendants, was examined as a witness. To some of his answers, and portions of others, the plaintiffs filed objections, and they also objected to the admissibility of all the testimony returned under the commission, for reasons set forth in the exception. The Court ruled the objections good to the seventh interrogatory in chief and Howarth's answer thereto, and also those to the answers to the 8th, 10th, 11th, 12th, 13th, 14th, 15th, 16th, 17th, 18th, 20th, and 21st interrogatories in chief, and those to the answers to the second, third, fifth, and sixth cross-interrogatories. To this ruling, this exception was taken. The paper referred to in the seventh interrogatory, was the one exhibited with the sixth, and proved by the witness as having been executed by the parties whose names were signed to it. The seventh interrogatory then proposed to inquire " whether or not there was any verbal understanding and arrangement made between the parties who signed it, and at the time it was signed, as to when the same should be binding and go into effect, and if so, what it was." Before disposing of this interrogatory and the answer to it, the defendants' statement to the Court of what they intended to prove in the progress of the case in relation to that paper, and that this testimony was offered in connection with it, should be considered. That statement was, as found on the 59th page of the printed record, that the articles referred to, were written by the defendant Beall, with the understanding among all who signed them that he was not to give them up or be bound by them, until he should be satisfied by a schedule of the debts of Howarth and Hutton, that their debts did not exceed $3,000; that Beall did so hold it until the schedule was produced, and it being largely over $3,000, he promptly gave notice to the other parties to the agreement, that he would not give up the

paper or permit it to go into execution, and that he never did give it up, until he made it a part of Howarth's testimony.   The object of the proposed proof was then not to explain or contradict by parol the written terms of an agreement, that was in operation and acted upon, but to show that it was a paper executed at one time, but to be held in the nature of an escrow not to be delivered or go into effect as to one of the parties, Beall, (who prepared it and held it in his own close possession,) until he should have produced to him, from two of the parties, an exhibit or schedule of their indebtedness, and if that exceeded a certain amount, the paper was not to be binding upon him.   There is no rule or principle of law forbidding a paper thus to be executed and held, and the fact, if it exist, could therefore be shown as evidence to prove that the partnership did not in fact exist among all the parties until the condition, upon which the paper was to take effect, was complied with.   With this proffer we think the answers to the seventh, eighth, tenth, and eleventh interrogatories, and the second, third, fifth, and sixth cross-interrogatories, should have been permitted to be read to the jury as evidence.   Also the answer to the twentieth interrogatory, as that is explanatory of the witness' own act, and the production of the letter referred to was not necessary, as its contents were not the subject of inquiry.   But the answer to the twenty-first interrogatory was properly rejected as hearsay, even if Hutton's declarations could otherwise, under the circumstances, have been given in evidence to affect the other defendants.   The answer to the seventeenth interrogatory was not admissible without the paper of cancellation therein mentioned; and we think also that the answers to the twelfth, thirteenth, fourteenth, fifteenth, and sixteenth interrogatories were properly excluded.   Looking to the drift of the interrogatories themselves and the answers as responsive thereto, they either relate to mat-

ters irrelevant, or to the *contents* of the schedule of indebtedness, and as its amount became a material fact, of which the paper was the best evidence, it ought to have been produced to the Commissioner or its absence properly accounted for. The paper referred to in the eighth exception of the defendants is not in the record, and we cannot, in its absence, pass upon this exception, or do otherwise than affirm it.

Having proved by Nelson Beall certain facts as detailed in the record, the defendants then offered to prove further by him the understanding with which the agreement of 17th November, 1859, was executed and held by Beall, and also its cancellation of 28th December, 1859. But the Court sustained the plaintiffs' objection to this offer, except so much as related to the writing and execution of the articles of partnership of 17th November, 1859. We think the Court erred in excluding this proof, for the reasons given in our disposal of the seventh exception, except so much as related to the amount of the exhibits made by Hutton. They ought to have been produced. The tenth exception was to the exclusion of the articles of cancellation of the 28th of December, 1859, offered alone, unconnected with the testimony of Beall, that had been rejected. Standing alone it was not evidence against the plaintiffs; nor did it serve the defendants in this action, and, as immaterial testimony, should have been rejected. The Court was therefore right in refusing its introduction. The proof of Douglass Percy, offered in the eleventh exception, was properly rejected as *res inter alios*.

We proceed now to the consideration of the defendants' twelfth exception, which arose upon the prayers, and was taken to the granting of the plaintiffs' prayers, and its refusal to grant the defendants' first prayer without the modification to it by the Court, and the rejection of the second and third prayers of the defendants.

The objection taken to the plaintiffs' first prayer is that it omits to put to the jury, the finding of the existence of the partnership among the four defendants, at the time the goods were ordered and contracted for. At first blush the prayer would seem liable to the objection, because the general allegation, "were partners as alleged," in the prayer, points to no time, and no time is alleged in the *narr.;* but when it is considered that the defendants are charged as partners and are only liable as such under the pleadings, and that the prayer puts it to the jury to find " that the articles charged in the account filed in the cause were delivered to them by the plaintiffs," they could only find the delivery to them as partners. If, therefore, they were partners when the goods were delivered to them, and the account specifies the dates of delivery, the time of the existence of the partnership in reference to the plaintiffs' demand becomes sufficiently explicit. The prayer might have been more specifically drawn, but we do not think that the jury could be misled by its phraseology. The object of the second and third prayers of the plaintiffs was to procure an instruction, that the jury might infer from the particular facts therein referred to, that Beall & McCullough were each a member of the firm with Hutton & Howarth. The first prayer was general, that if the jury found from all the facts in evidence that a partnership existed among the four defendants, when the goods in the account were ordered and delivered, then the four were bound and the plaintiffs could recover. The second and third prayers sought to instruct the jury how they might find Beall & McCullough to be such partners. The time *when,* however, is not specified, and it is objected that the evidence referred to was not sufficient to establish the partnership, as to Beall & McCullough, as existing prior to the 17th November, 1859. To prove this was the object of the testimony. It all went in, or was permitted to go in for that purpose, and as the facts are numerous, occur-

ring at different times, and had a tendency to establish the fact sought by their introduction, their weight and effect were for the jury, and the instruction in the first prayer limited the finding of Beall and McCullough's participation to the delivery of the goods in the account. Regarding the prayers in this light, we see no error in the instruction so far as the plaintiffs' three prayers are concerned.

The defendants' prayers are now to be considered.

The first, second and third prayers of the defendants present the hypothesis, that if the articles charged were furnished to, and upon the orders of Howarth & Hutton, then partners, and that they were so furnished or engaged to be furnished prior to the 17th of November, 1859, then the plaintiffs cannot recover in this action, though they should find that Beall & McCullough became partners with them at that time upon the terms expressed in the paper writing of that date; unless all agreed that Howarth & Hutton should be released from the engagements made by them and that they and Beall & McCullough agreed anew with the plaintiffs to become responsible therefor; and that there was no evidence in the case of such release and new promise. The Court, by a modification of the first prayer, instructed the jury that the plaintiffs could recover in the action, if in addition to the facts referred to in it, "the jury should find that Beall & McCullough after coming into the firm of Hutton & Howarth, expressly or impliedly agreed to assume the debt due by said firm to the plaintiffs." The general principle is, that an incoming partner will not be liable in respect of debts contracted by the firm previously to his joining it, and that the presumption of law is against any such liability. Yet he may become liable by expressly assuming them upon a proper consideration, or otherwise dealing with *the creditor* in such a manner as to create an implied obligation and duty to pay the same in common with the old firm, but this is not

42						v. 27

658        MARYLAND REPORTS.

Beall and McCullough vs. Poole & Hunt. Poole & Hunt vs. Howarth & Hutton

to be inferred from the mere act of joining in the partnership; there must be other circumstances to justify the conclusion. In other words, there must be some agreement between the incoming partner and the creditor, either express or implied, and his liability with respect to the old debts of the firm will attach by virtue of the agreement, and not by reason simply of his having become a partner. *Collyer on Part.*, sec. 520; 1 *Lind. on Part.*, 315, 318; *Story on Part.*, sec. 152, and cases referred to. And Judge Story, in further remarking on this subject, states that in cases of this nature the first consideration is to ascertain whether there has been subsequently, with the consent of all the parties, any change or extinguishment of the old contract. Where it is established by satisfactory evidence that upon the accession of a new partner, a new promise has been made by the entire new firm in respect of the old debt, with the consent of the old partners, as well as of the creditor, it will amount to what is called in the Roman law a novation of the debt, (*novatio debiti*,) and the new partner will be chargeable with the debt. But this adoption or ratification of the new promise by the new partner must be clearly shown, otherwise it will not be obligatory on him. *Story on Part.*; sec. 153. Tested by the law as thus laid down, and extracted from the authorities, as well those cited in the argument as others, the first prayer of the defendants as propounded by them was correct, unless there was evidence in the cause, to justify or support a modification looking to a new contract of such a nature and extent as to bind both Beall & McCullough. In looking through the proof in the various exceptions, this Court is unable to discover testimony either of an express promise, or of circumstances which could justify the inference that such a contract was made.

The first prayer of the defendants, according to these views, should have been granted, as propounded; also, the second and third, this Court understanding the word,

*released*, used in them, as expressing the idea that the old contract was merged in the new, and that the agreement referred to, was based upon a proper consideration—the second prayer as expressing a legal proposition, and the third as showing it did not apply in this case, for the want of the evidence sufficient to support it.

We therefore affirm the Court below on the first, second, third, fourth, fifth, sixth, eighth, tenth, and eleventh exceptions, and reverse on the seventh, ninth, and twelfth exceptions of the defendants.

In the course of the trial the plaintiffs below took two exceptions to the rulings of the Court, and their appeal also. But as the verdict and judgment below were for them, their appeal was inadvertently taken and prosecuted, and will be dismissed. As this Court has reversed in the other appeal, and the case goes back upon a *procedendo* to be tried over, it is the duty of this Court to express its opinion upon the exceptions taken by the plaintiffs below. The first was to the ruling of the Court in excluding all the testimony of George Hutton, taken under a commission issued to John P. Poe and Frederick Pinkney. The only objections specified in the exception were that the papers referred to in the sixth and seventh interrogatories and the witness' answer to them, were not returned with the commission and testimony taken under it. The Court not only sustained these objections, but refused to let any part of the testimony taken under the commission be read to the jury. In examining the interrogatories and answers we find that they chiefly related to papers which ought to have been submitted to the witness, and identified, and returned with the commission. Testimony relating to them or their contents, when these themselves are important and material, and are the best evidence of their own existence or nature, is inadmissible, when their non-production is unexplained, and no foundation has been laid for the introduction of

parol proof. This is the character of nearly the whole mass of testimony taken and returned under this commission, and it was properly excluded by the Court. The second exception was taken to the granting of the defendants' first prayer as modified, and the granting of their fourth prayer. We have already expressed our opinion in the appeal of the defendants, on the first prayer offered by them and the modification annexed to it by the Court. The fourth prayer took the ground that in case of a new contract by all the defendants with the plaintiffs, the latter could not recover on the pleadings in the case. We, however, are of opinion that the manner of declaring in this case would not be an obstacle in the way of the plaintiffs' recovery, if there were evidence to support the theory of a new engagement by all the defendants. As a legal proposition, in reference to the pleadings, the Court therefore erred in granting the defendants' fourth prayer.

> *Judgment reversed and*
> *procedendo awarded.*

(Decided 23d July, 1867.)