GAAR SCOTT & CO. *vs.* J. K. GREEN AND E. E. GREEN.

Opinion filed July 27th, 1896.

**Contract—Consideration.**

> Where a party is legally bound by contract to execute certain papers, but refuses to do so unless the other party to the contract will enter further agreements and promises, such further agreements and promises are without consideration, and impose no liabilities.

**Enforcement of Payment.**

> Principle applied: A. purchased machinery of B. by written contract in which he agreed to execute certain notes therefor. After receiving the machinery, he refused to execute the notes unless the vendor would agree to do certain things about the machinery not embraced in the original contract. This the vendor promised to do. *Held*, that such promise was without consideration, and that collection of the notes could be enforced without showing compliance therewith.

Appeal from District Court, Cass County; *McConnell*, J.

Action by Gaar, Scott & Co., against J. K. Green and .E. E. Green. Judgment for defendants, and plaintiff appeals.

Reversed.

*Ball, Watson & Maclay*, for appellant.

The execution of the notes and mortgage by the defendants could furnish no consideration for the alleged new agreement to put the machine in repair. Whart. on Contracts, 500; *Conover* v. *Stilwell*, 34 N. J. L. 54; *Vanderbilt* v. *Schreyer*, 91 N. Y. 392. Defendants allege an oral warranty, but there was a written warranty to the same effect. In such case proof of the oral warranty was inadmissible. *Zimmerman* v. *Dolph*, 62 N. W. Rep. 339; *Bucy* v. *Pitts*, 56 N. W. Rep. 541. Evidence of the condition subsequent, viz: That the notes were not to be paid if the promise to put the machine in order was not fulfilled was inadmissible. Sections 3888-3889, Rev. Codes; *Brown* v. *Hall*, 1 Denio. 400; *Ely* v. *Kilborn*, 5 Denio. 514; *Payne* v. *Ladue*, 1 Hill. 116; *Erwin* v. *Saunders*, 1 Cow. 249; *Van Brunt* v. *Day*, 81 N. Y. 251; *Underwood* v. *Simonds*, 12 Metc. 275; *Adams* v. *Wilson*, 12

Metc. 138; *Wakefield* v. *Stedman*, 12 Pick. 562; *Spring* v. *Lovett*, 11 Pick. 417; *Sears* v. *Wright*, 24 Me. 278; *McClintock* v. *Cory*, 22 Ind. 175; *Harlow* v. *Boswell*, 15 Ill. 56; *University* v. *Boorman*, 14 N. W. Rep. 819; *Washabaugh* v. *Hall*, 56 N. W. Rep. 82; *Dean* v. *Bank*, 6 Dak. 222; *Moseley* v. *Hanford*, 10 B. and C. 729; The agent had no authority to alter or vary the terms of the contract. *Minnesota Thresher Co.* v. *Lincoln*, 4 N. D. 410; *Reeves* v. *Corrigan*, 3 N. D. 415; *Fahey* v. *Esterly Machine Co.*, 3 N. D. 220; *Walter A. Wood, etc. Co.* v. *Crow*, 30 N. W. Rep. 609.

*D. A. Lindsey*, for respondents.

The notes were delivered upon condition which could lawfully be imposed. *Benton* v. *Martin*, 52 N. Y. 570. Parole evidence is admissible to show that a written contract was not to become binding until the performance of some condition precedent resting in parole. *Reynolds* v. *Robinson*, 110 N. Y. 654, 18 N. E. Rep. 127; *Merchants Exc. Bank* v. *Luckow*, 37 Minn. 542, 35 N. W. Rep. 434; *Westman* v. *Krumweide*, 30 Minn. 313, 15 N. W. Rep. 255; *McFarland* v. *Sikes*, 54 Conn. 250, 7 At. Rep. 408; *Belleville Sav. Bank* v. *Bornman*, 124 Ill. 205, 16 N. E. Rep. 211; *Ware* v. *Allen*, 128 U. S. 591, 9 S. C. Rep. 174; *Burke* v. *Dulaney*, 153 U. S. 228.

BARTHOLOMEW, J. There is no conflict in the evidence in this case. There was a directed verdict for defendants. Motion for a new trial denied. Judgment upon the verdict, and plaintiff appeals. The action is upon certain promissory notes executed by respondents to appellant. The notes had been secured by a chattel mortgage. The mortgaged property had been seized and sold, and the amount realized credited upon the notes, and this action is for the balance. The notes were given for the purchase price of a grain separator. The issues arise upon the allegations in the answer that the notes were delivered conditionally only. The answer also alleges that time of payment was extended. It appears that on August 21, 1893, the respondent J. K. Green

entered into a written contract with appellant, through its agents at Fargo, for the purchase of a separator. The usual printed and written form of contract was used, which recites:

Fargo, August 21, 1893.

"The undersigned, residing in Cass County, State of North Dakota, this day order of Gaar, Scott & Co., Richmond, Indiana, through Magill & Co., agent at Fargo, N. D., one 40 inch cylinder, 58 inch separator, flax and timothy riddles, threeway crank thresher, with truck wagon and folding stacker, and all small belts, and one Fargo weigher and wagon loader. In consideration whereof, the undersigned agrees to receive the same on its arrival, subject to all the conditions of the warranty printed below, pay freight and charges thereon from your factory, and also agrees to pay to your order, at the time and place of delivery, the sum of six hundred and thirty ($630.00) dollars, as follows: Cash on or before delivery, $————; note due October 1st, 1893, for $140.00, with interest at eight per cent; note due October 1st, 1894, for $210.00, with interest at eight per cent; note due October 1st, 1895, for $200.00, with interest at eight per cent; note due October 1st, 1893, for $80.00, with interest at eight per cent. Said notes to be made payable to Gaar, Scott & Co. And I further agree, at the time and place of delivery, to give in security of said notes, a first mortgage on the above named machinery, and on the following other property or further approved security, viz.: 14 horse Buffalo Pitts plain engine; one grain tank.   *   *   *

"Warranty: The machinery furnished on this order is warranted to be made of good materials, well constructed, and, with proper use and management, to do as good work as any other of the same size and rated capacity made for the same purpose. If, inside of six days from the day of its first use, it shall fail in any respect to fill this warranty, written notice shall be given immediately by the purchaser to Gaar, Scott & Co., at their home office, Richmond, Ind., and written notice also to the local agent through whom the same was received, stating particularly what parts and wherein it fails to fill the warranty, and a reasonable

time allowed the company to get to the machine with skilled workmen, and remedy the defects, if any there be (if it be of such nature that a remedy cannot be suggested by letter;) the purchaser to render all necessary and friendly assistance and co-operation in making the machinery a practical success. If any part of the machinery cannot be made to fill the warranty, that part which falls shall be returned immediately by the undersigned to the place where it was received, with the option in the company either to furnish another machine or part in place of the machine or part so returned, which shall perform the work, or return the money and notes which shall have been given for the same, and thereby rescind the contract *pro tanto* or in whole, as the case may be, and be released from any further liability whatever herein. * * * It is further mutually understood and agreed that use of said machinery, after the expiration of the time named in the above warranty, shall be evidence of the fulfillment of the warranty, and full satisfaction to the undersigned, who agrees hereafter to make no other claim on Gaar, Scott & Co.; and, further, that if the above machinery, or any part thereof, is delivered to the undersigned before settlement is made for same, as herein agreed, or any alterations or erasures are made in the above warranty or in this special understanding and agreement, the undersigned waives all claims under warranty."

This contract was signed by J. K. Green, and accepted by appellant. We gather from the record, although not expressly so stated, that the machine was in Fargo when the order was given; that it was at once delivered to J. K. Green, who took it to his farm, without executing the notes and mortgage. The machine was tried for about two weeks, and found to fail to work as warranted. Magill & Co., the agents, sent several men out to try and make it work properly, but without success. J. K. Green testifies: That he told the agent that he "would not take the machine, because it was no good." That the agent proposed that they would "put the machine in good order the next year, to do as good work as any other machine, and just as much of it; that, if

it didn't, why the notes should not be paid." That he then delivered the notes to the agent, who accepted them on that condition. All this testimony was objected to, on the ground that it tended to vary the written contract evidenced by the notes. E. E. Green, the other respondent, testified upon this point, over the same objection, as follows: "Kerr, the plaintiff's agent, came for me, and we went to Mapleton, and he asked J. K. Green to sign the notes. The latter stated he would not sign them until the machine gave satisfaction; if he would make the machine give satisfaction, that he would close the deal, and sign the notes, and give him security, as much as he wanted. So, on the condition that he would put the machine in good running order another year, and make it do as much work and as good work as any other machine of that kind, he signed the notes, and he asked me if I would sign them with him, and I told him I would if he would carry him over another year in case he didn't pay anything that fall. Kerr told me he would; so I signed the notes with him." There was also other evidence as to the inferior character of the machine, and that in the spring of 1894 plaintiff seized and sold the machine under the chattel mortgage. It was also proved that Magill & Co. were the agents of the plaintiff, and that Kerr was a subordinate employed by them, and that neither Magill & Co. nor Kerr had any authority to take any other or different notes than those called for by the contract of sale, or to vary the terms of the notes themselves. But it was further shown that respondents had no knowledge as to any limitations on Kerr's authority as agent for plaintiff.

On this testimony, each party moved for a directed verdict. Appellant's motion was denied, and respondent's granted. We think this was error. It is perhaps true, as urged by respondents, that the maker of a note may place the same in the hands of the payee, and such delivery be so far conditional that no liability upon the notes in the hands of the payee will arise until the specified conditions are performed. *Benton* v. *Martin*, 52 N. Y. 570; *Reynolds* v. *Robinson*, 110 N. Y. 654, 18 N. E. 127; *Bank* v.

*Luckow*, 37 Minn. 542, 35 N. W. 434; *McFarland* v. *Sikes*, 54 Conn. 250, 7 Atl. 408; *Bank* v. *Bornman*, 124 Ill. 205, 16 N. E. 210. And this conditional delivery may be shown by parol. Such evidence has no tendency to vary or contradict the terms of the written instrument. It only shows that the terms of the instrument never became obligatory. *Ware* v. *Allen*, 128 U. S. 591, 9 Sup. Ct. 174; *Burke* v. *Dulaney*, 153 U. S. 228, 14 Sup. Ct. 816. It may also be true (but we do not decide the point) that if the subsequent contract to which J. K. Green testifies was based upon a sufficient consideration, and if the notes in suit were given by reason of such subsequent promise, and would not have been given otherwise, plaintiff, in seeking to enforce such notes, ratifies such subsequent promise, and cannot be heard to say that it was unauthorized. On this point, see *Churchill* v. *Palmer*, 115 Mass. 310; *Melby* v. *Osborne*, 33 Minn. 492, 24 N. W. 253; *Culver* v. *Ashley*, 19 Pick. 300; *Ellwell* v. *Chamberlin*, 31 N. Y. 611-619; *Meehan* v. *Forrester*, 52 N. Y. 277; *Mundorff* v. *Wickersham*, 63 Pa. St. 87; *Saving Fund Ass'n* v. *Fire Ins. Co.*, 16 Iowa, 74; *Eadie* v. *Ashbaugh*, 44 Iowa, 519.

But respondents are not in a position on this record to avail themselves of these principles. J. K. Green bought the machine under a written contract, which included a warranty on the part of the vendor. By the terms of that warranty, he agreed that, in case said machine, or any of its parts, failed to operate as warranted within six days after its first use, he would give written notice of the defect to the home office of the vendor, and also written notice to the agent from whom the machime was purchased, to the end that efforts might be made to remedy the defects, and, if not remedied, the defective machine or part must be returned to the place where received. He further agreed that use of said machine after the expiration of the six days should be evidence of the fulfillment of the warranty, and that he would thereafter make no other claim upon the vendors. The improvidence of such a contract as applied to threshing machinery is most glaring. It cannot be tested until the crop is ready for

threshing and, once that time arrives, delays are so dangerous and expensive, time is of such importance, that the farmer will take great risks on the machinery, rather than cease work. The practical result is that in case of defective machinery the vendors can generally avoid liability on the warranty by reason of some default on the part of the vendee. But, while parties continue to make such contracts, courts must continue to enforce them. It does not appear in this case that any written notice of defects was ever given to the home office or the local office. We have, held that this was absolutely necessary. See *Fahey* v. *Machine Co.*, 3 N. D. 220, 55 N. W. 580. It does not appear that the machine, or any part thereof, was ever returned, or any offer made to return the same. It does conclusively appear that the machine had been used for 12 days at the time the notes were given. Under these circumstances, the respondents were in no condition to claim defects in the machine. It stood as to them as completely fulfilling the warranty. J. K. Green had agreed to give the identical notes and mortgage that he did give. The consideration for that promise was the sale of the machine which he had in his possession when he gave the notes. That consideration was exhausted, and he had no legal right to insist upon any other terms or contract upon the part of the vendors; and any such further contract, if given, was without consideration, and imposed no obligation. True, he might have refused to execute the notes, but he could only have done so on condition of incurring liability for all damages resulting from such refusal, and this the law regards as the equivalent of performance. As fully sustaining these views, we cite, without quoting therefrom, the following well considered cases. *Conover* v. *Stillwell*, 34 N. J. Law, 54; *Geer* v. *Archer*, 2 Barb. 420; *Ayres* v. *Railroad Co.*, 52 Iowa, 478, 3 N. W. 522; *Reynolds* v. *Nugent*, 25 Ind. 328; *Furnace Co.* v. *French*, 34 How. Prac. 94; *Vanderbilt* v. *Schreyer*, 91 N. Y. 392; *Festerman* v. *Parker*, 10 Ired. 474.

One other point: E. E. Green signed the notes, and is sued jointly with J. K. Green, and they answer jointly. E. E. Green

did not sign the original contract of purchase, nor does such contract in terms provide that E. E. Green should sign the notes. He testifies that he signed in consideration of the promise to extend time. But this is at variance with his answer. In that he declares that the chattel mortgage was given in consideration of the promise to extend the time. But the original contract called for the chattel mortgage. The sale of the machine furnished the consideration for that. There was no extension of time in fact, but we do not discuss the question whether or not an executory promise to extend time on the contingency mentioned would furnish a sufficient consideration for the signature of E. E. Green to the notes. We think the answer conclusively shows that E. E. Green was in fact interested in the purchase of the machine. The respondents declare in their answer that they "are united in interest;" and, in the third division of their answer, they set up a counterclaim, and allege a purchase of the separator by both defendants, and set up a warranty to both defendants, and unite in asking a judgment against plaintiff for damages for the breach of such warranty. Being in fact a joint purchase, there was, of course, sufficient consideration for the promise of E. E. Green.

The judgment of the District Court is reversed, and a new trial ordered. All concur.